**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George F. Bobolas, a Greek individual,<br><br>Plaintiff,<br><br>vs.<br><br>John Does 1-100, Internet website bloggers,<br><br>Defendants. | No. CV-10-2056-PHX-DGC<br><br>**ORDER** |

Plaintiff George Bobolas has filed suit against unknown "John Doe" defendants who allegedly have posted false statements about him on the Internet website Bobolasgate.info. The complaint requests injunctive relief and asserts several common law claims: defamation *per se*, defamation, false light invasion of privacy, tortious interference with economic advantage, and intentional and negligent infliction of emotional distress. Doc. 1. Plaintiff seeks a temporary restraining order ("TRO") pursuant to Rule 65 of the Federal Rules of Civil Procedure (Doc. 2), and an order requiring preservation of documents (Doc. 8). A hearing was held on September 29, 2010. The Court will deny the motions.

**I.   Subject Matter Jurisdiction.**

Federal courts are courts of limited jurisdiction. "They possess only that power authorized by Constitution and statute," *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994), and "the presumption is that [they are] without jurisdiction unless the contrary affirmatively appears[,]" *Fifty Associates. v. Prudential Insurance Co. of America*, 446 F.2d 1187, 1190 (9th Cir. 1970). Plaintiff alleges that subject matter jurisdiction exists under the diversity statute, 28 U.S.C. § 1332. He alleges, "upon

1 information and belief, [that] there is complete diversity of citizenship between the parties
2 and the amount in controversy exceeds $75,000[.]" Doc. 1 ¶ 4.

3   Because Plaintiff is not a citizen of one of the United States, but instead is a citizen
4 of Greece (*id.* ¶ 6), subsections (a)(1) and (a)(3) of the diversity statute do not apply.
5 Diversity jurisdiction exists under those subsections only where the action is between
6 "citizens of different States[.]" 28 U.S.C. § 1332(a)(1), (3); *see Transure, Inc. v. Marsh &*
7 *McLennan, Inc.*, 766 F.2d 1297, 1298 (9th Cir. 1985) (noting that for jurisdiction to exist
8 under subsection (a)(3) there must be both United States citizen plaintiffs and defendants).
9 Subsection (a)(4) does not apply because this suit is not between "a foreign state . . . as
10 plaintiff and citizens of a State or of different states[.]" 28 U.S.C. § 1332(a)(4). The only
11 possible basis for diversity jurisdiction, then, is subsection (a)(2): a suit between "citizens
12 of a State and citizens or subjects of a foreign state[.]" 28 U.S.C. § 1332(a)(2); *see M.N.H.*
13 *Exports v. B.A.T. Wear, Inc.*, Civ. No. 06-3874 (AET), 2009 WL 427524, at *2 n.1 (D.N.J.
14 Feb. 20, 2009).

15   "Although the statute does not so require explicitly, the Supreme Court has repeatedly
16 held, and recently reiterated, that § 1332(a) requires complete diversity[.]" *Abrego v. Dow*
17 *Chem. Co.*, 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted). Complete diversity does
18 not exist under § 1332(a)(2) where the case is between "a single foreign plaintiff . . . and
19 numerous foreign defendants (in addition to U.S. defendants)[.]" *Craig v. Atl. Richfield Co.*,
20 19 F.3d 472, 476 (9th Cir. 1994); *see Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir.
21 1983) ("Diversity jurisdiction does not encompass foreign plaintiffs suing foreign
22 defendants."); *Faysound, Ltd. v. United Coconut Chems, Inc.*, 878 F.2d 290, 295 (9th Cir.
23 1989) (same).

24   Plaintiff alleges, on information and belief, that "certain posters on the Blog and
25 Defendants named herein are citizens of the United States." Doc. 1 ¶ 7. Plaintiff's counsel
26 clarified at the hearing that while at least one blogger appears to be a Greek citizen and
27 others may be citizens of foreign states, the complaint intends to name only United States
28 citizens as Defendants. Because the complaint reasonably can be construed in this manner,

the Court finds that diversity jurisdiction exists under 28 U.S.C. § 1332(a)(2), that is, this action is between "citizens of a State" (Defendants) and "citizens or subjects of a foreign state" (Plaintiff). The Court will proceed with the assumption that all of the "John Doe" Defendants named in this case are citizens of the United States, and that no blogger who is a foreign citizen is a Defendant in this action.[1]

## II. The TRO Application.

Plaintiff seeks injunctive relief against Defendants and non-party GoDaddy.com, Inc., the alleged website host and domain name registrar of Bobolasgate.info. Plaintiff seeks an order enjoining Defendants from operating, maintaining, or administering the website, from posting on the website false or defamatory statements or those intended to incite and fuel public outrage against Plaintiff, and from engaging in other acts that place the lives of Plaintiff or his family at risk. Doc. 2 at 2-3. The injunction sought against GoDaddy is even broader. Plaintiff requests an order not only enjoining GoDaddy from allowing Defendants to post statements on Bobolasgate.info, but also from allowing false statements to remain on that website, from allowing postings to be made otherwise accessible on the Internet, and from allowing Defendants to use any other website targeting Plaintiff or to make false statements about him on any other website. *Id.* 1-2.

### A. GoDaddy.

A federal court generally "may not attempt to determine the rights of persons not before the court." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1984). Plaintiff's counsel argued at the TRO hearing that GoDaddy must be dealt with as a non-party because

---

[1] The Court has concerns about whether it can exercise personal jurisdiction over Defendants who have done nothing more than post a statement on an Internet blog hosted in Arizona. Plaintiff's counsel argued at the TRO hearing that such persons have done business with GoDaddy, an Arizona company, and thereby have directed their actions at Arizona. While this may be true for persons who contracted with GoDaddy to set up the blog, the Court is not convinced it is true for persons who did nothing more than post an Internet comment on the blog from outside Arizona and who otherwise had no involvement with GoDaddy. Because the Court concludes below that Plaintiff has not made the showing needed for a TRO, it need not address this issue further.

GoDaddy cannot be named as a Defendant due to the Communications Decency Act. *See* 47 U.S.C. § 230. The Act does provide that GoDaddy cannot be held liable for defamatory statements made by bloggers, but Plaintiff has cited no authority suggesting that GoDaddy cannot be named as a defendant solely for purposes of effectuating injunctive relief.

Even if the Act prevents GoDaddy from being named as a party, Plaintiff has provided no legal or factual basis that would allow the Court to enjoin GoDaddy as a non-party. Under Rule 65(d)(2), a TRO binds only parties, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them. Fed. R. Civ. P. 65(d)(2)(A)-(C). Plaintiff's counsel argued that GoDaddy is an agent of Defendants given its role as website host and domain name registrar, but Plaintiff has made no such allegation in the complaint and provides no factual or legal proof on this point in its papers. As a result, the Court cannot enter a TRO against GoDaddy. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969) ("It was error to enter the injunction against Hazeltine, without having made [the 'active concert or participation'] determination in a proceeding to which Hazeltine was a party."); *Steiniger v. Gerspach*, No. CV-108087-PCT-GMS, 2010 WL 2671767, at *2 n. 1 (D. Ariz. July 2, 2010) (parties "provided [no] legal or factual basis that would allow the Court to enjoin a non-party").

In addition, some courts have held that injunctions requiring defendants to remove defamatory statements from a website cannot be enforced against non-party website hosts like GoDaddy. *See*, *e.g.*, *Blockowicz v. Williams*, 675 F. Supp. 2d 912, 914-16 (N.D. Ill. 2009). Plaintiff does not address this authority.

**B.    John Doe Defendants.**

To obtain a TRO, Plaintiff must show that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of temporary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, --- U.S. ----, 129 S. Ct. 365, 374 (2008). Serious questions going to the merits plus a balance of hardships that tips sharply in Plaintiff's favor "can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance*

*for Wild Rockies v. Cottrell*, --- F.3d ----, 2010 WL 3665149, at *5 (9th Cir. Sept. 22, 2010).

The Court concludes that Plaintiff has not shown a probability of success on the merits, nor has he shown that serious questions have been raised or that the balance of hardships tips sharply in his favor. Given these conclusions, Plaintiff is not entitled to a TRO and the Court need not address the other requirements for injunctive relief.[2]

### 1. Success on the Merits.

Plaintiff's counsel made clear at the TRO hearing that only U.S. citizens are named as Defendants in this case. As a result, bloggers who are not U.S. citizens are not Defendants and their blog entries cannot form the basis for injunctive relief. In identifying the allegedly defamatory statements posted on Bobolasgate.info, Plaintiff has provided no basis for determining which are posted by U.S. citizens and which are not. The statements are all written in Greek and primarily concern internal Greek affairs and alleged details of Plaintiff's involvement in those affairs, suggesting strongly that many if not most of them were posted by Greeks citizens. Thus, Plaintiff has failed to show that Defendants in this case – U.S. citizens – have made any of the blog entries that are defamatory. For all the Court knows, every allegedly defamatory statement was made by a person who is not a Defendant in this case and not subject to the Plaintiff's defamation claims or the Court's injunctive powers. What is more, even if Plaintiff could show that some of the entries on the blog were made by U.S. citizens, such a showing would not justify Plaintiff's request for a TRO shutting down the entire blog. Stated simply, because Plaintiff has not attributed any particular statement on the blog to a Defendant in this case, he has not shown that he is likely to succeed on the merits of his claim that Defendants have defamed him.

---

[2] Although the Court need not address it in detail, Plaintiff's application misstates the showing of irreparable harm required for a TRO. Plaintiff asserts that "so long as there is a probability of success on the merits, a mere possibility of injury suffices for injunctive relief[.]" Doc. 2 at 12. This is not a correct statement of federal law. Injunctive relief is available under Rule 65 only upon a showing that irreparable harm is *likely* to occur in the absence of temporary relief. *See Winter*, 129 S. Ct. at 374; *Alliance for Wild Rockies*, 2010 WL 3665149, at *5.

1   This is not Plaintiff's only failing on the merits. Assuming for purposes of this order 2 that Arizona law applies to bloggers around the United States, Plaintiff must prove, by a 3 preponderance of the evidence, that Defendants (1) knowingly, recklessly, or negligently 4 (2) published to a third party (3) a false statement about Plaintiff (4) that defamed his 5 character. *Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977) (adopting 6 Restatement (Second) of Torts § 580B (1977)). "In Arizona, a publication which impeaches 7 the honesty, integrity or reputation of a person is [defamatory] per se." *Id.* at 1223. Damages 8 are presumed from those statements, but only where actual malice is shown. *See id.*; *Gertz* 9 *v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974) ("plaintiffs who do not prove knowledge of 10 falsity or reckless disregard for the truth [are restricted] to compensation for actual injury").

11   Plaintiff does not discuss the allegedly defamatory publications on a statement-by-12 statement basis, but instead cites exhibits to declarations and addresses them collectively as 13 the "False Statements." Doc. 2 at 5. The statements provided in the exhibits consist of 14 excerpts of posts on Bobolasgate.info translated from Greek to English. Doc. 5-2. Because 15 the context of the entire post may be relevant in determining the actionability of the quoted 16 statements, it is difficult for the Court to determine whether the statements are defamatory 17 *per se* or whether they constitute non-actionable opinions or hyperbole. Plaintiff recites 18 certain alleged false statements in his declaration (Doc. 6 ¶¶ 7-8), but some of those appear 19 to be non-actionable opinions. Other statements do appear to be defamatory *per se*, but 20 Plaintiff has not shown a likelihood of success on his defamation claim because he has failed 21 to present sufficient evidence on the element of fault.

22   The only evidence Plaintiff offers to establish fault is his own "belie[f] that the False 23 Statements are made by individuals with knowledge[] of or reckless disregard for the truth[.]" 24 Doc. 6 ¶ 12. Plaintiff also believes that the False Statements are intended to be taken as true 25 and to arouse anger against him. *Id.* ¶¶ 13-14; *see* Doc. 2-2 ¶ 5. This evidence and some of 26 the statements themselves may be sufficient to support a finding that Defendants bear ill will 27 toward Plaintiff, but the Supreme Court has made clear that "the actual malice standard is not 28 satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term."

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) (citations omitted); *see Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 82 (1967) ("personal spite, ill will or a desire to injure plaintiff" not equivalent to actual malice); *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 10 (1970) (finding of liability "merely on the basis of a combination of falsehood and general hostility" was "error of constitutional magnitude"); *see also Heuisler v. Phoenix Newspapers, Inc.*, 812 P.2d 1096, 1100 (Ariz. Ct. App. 1991) ("Actual malice . . . is not established through a showing of bad motives or personal ill-will."). Proof of actual malice requires evidence showing that the defendants "published either with knowledge that the defamatory statements were false or with reckless disregard for whether the statements were true or false." *Heuisler*, 812 P.2d at 1100 (citing *N.Y. Times*, 376 U.S. at 279-86); *see Scottsdale Publ'g, Inc. v. Super. Ct. (Romano)*, 764 P.2d 1131, 1134 (Ariz. Ct. App. 1988) ("Proving knowledge of falsity or reckless disregard for truth is defined in legal shorthand as proving 'actual malice.'"). Plaintiff has not presented evidence from which the Court can conclude that he is likely to succeed in proving malice.[3]

Nor has Plaintiff presented evidence showing negligence. In the defamation context, negligence is the failure to act "reasonably in attempting to discover the truth or falsity or the defamatory character of the publication[.]" *Peagler*, 560 P.2d at 1222 (citing Restatement § 580B). Plaintiff does not address what efforts Defendants may have made to discover their truth or falsity. Admittedly, this is a daunting task given the anonymity of Defendants, but Plaintiff has not shown that the requirements for injunctive relief or proof of defamation are relaxed when Defendants are unknown.

Citing *Roscoe v. Schoolitz*, 464 P.2d 333, 312 (Ariz. 1970), Plaintiff argues that statements that are defamatory *per se* are actionable without proof of fault. Doc. 2 at 11. As this Court previously has explained, however, fault is an essential element of a claim for

---

[3] Public figures "may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz*, 418 U.S. at 342. Plaintiff arguably is a public figure given his prominence in Greek affairs. *See id.* at 342-45. Even if he is not, however, he has failed to make the negligence showing required for fault under Arizona defamation law.

defamation given the First Amendment's protection of free speech. *Best Western Int'l, Inc. v. Furber*, No. CV-06-1537-PHX-DGC, 2008 WL 4182827, at *6 (D. Ariz. Sept. 5, 2008); *see Gertz*, 418 U.S. at 347 ("We hold that, *so long as they do not impose liability without fault*, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private person.") (emphasis added); *Peagler*, 560 P.2d at 1220 (*Gertz* "placed certain limitations on state actions: first, that there could be no recovery without fault[.]"); *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 178, 180 & n.1 (Ariz. Ct. App. 1985) ("Fault is the third element of liability."). Plaintiff has not made a prima facie case on the essential element of fault.

### 2. Serious Questions and Balance of Hardships.

As noted above, a Plaintiff who fails to show a likelihood of success on the merits may still obtain injunctive relief is he shows that serious questions have been raised and the balance of hardships tips sharply in his favor. *Alliance for Wild Rockies*, 2010 WL 3665149, at *5. Given Plaintiff's failure to attribute any defamatory statement to Defendants in this case, he has not shown that serious questions exist as to the potential liability of Defendants for defamation. Nor has he shown that the balance of hardships tips sharply in his favor.

The hardship to be experienced by Defendants if the requested TRO is issued would consist of the Court's restraint on their speech. Because Plaintiff has not shown that any defamatory statement is attributable to a Defendant as opposed to a non-Defendant, the blanket TRO sought by Plaintiff would stop speech regardless of whether it is defamatory. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976).

The hardship to be experienced by Plaintiff if the TRO does not issue consists of the continued publication of the blog with its derogatory statements. Plaintiff states that he, his family, and his business will be irreparably harmed and endangered if the TRO does not issue. Doc. 2 at 14. Plaintiff notes that the current climate in Greece is one of economic and financial chaos, political unrest, and terrorist activity. *Id.* at 6. He states that his wealth and financial standing within Greek society make him a target of terrorist attacks, that two of his

1  family-owned businesses have been attacked in the past, and that he and his family have been
2  assigned police protection for a number years. Doc. 6, ¶¶ 19-23 & n.1. He "fear[s] that the
3  False Statements are inciting and angering, and any future statements may so incite and
4  anger, the Greek public such that [his] police protection will be vulnerable to and/or included
5  in any attack on [him] and/or members of [his] family." *Id.* ¶ 26. A policeman assigned to
6  protect Plaintiff believes that "the false statements on the Blog may be spurring violence
7  against the Bobolas family due to the family's wealth and financial standing in Greek
8  society." Doc. 2-2 ¶ 7.

9  The Court takes these arguments seriously, and certainly does not wish to minimize
10 Plaintiff's concerns for the safety of himself and his family. But Plaintiff has not shown that
11 the risks he describes have arisen from the statements of any Defendant. Not only has he not
12 attributed an increase in risk to any particular statement, he has not attributed any particular
13 statement to a U.S. citizen blogger. As a result, the Court cannot conclude that the threats
14 Plaintiff describes have been caused by any Defendant, or that Plaintiff will suffer the harm
15 unless Defendants' speech is restrained. Thus, when the potential harms to each side are
16 balanced – when Plaintiff's concerns that cannot be attributed to Defendants are weighed
17 against the Defendants' certain loss of First Amendment rights if the TRO is issued – the
18 Court cannot conclude that the balance tips sharply in Plaintiff's favor. Thus, Plaintiff has
19 not shown his entitlement to a TRO even if he had shown the existence of serious questions.

20 **C.  Prior Restraint.**

21 Plaintiff asks the Court to issue a TRO that shuts down Bobolasgate.info, eliminating
22 past statements on the blog and preventing future statements. In addition to the flaws
23 identified above, Plaintiff's requested relief would constitute a prior restraint on speech,
24 much of it concerning Greek politics and public affairs. Such a request raises serious First
25 Amendment concerns.

26 "'Temporary restraining orders and permanent injunctions – i.e., court orders that
27 actually forbid speech activities – are classic examples of prior restraints.'" *Mortg.*
28 *Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.*, 999 A.2d 184, 194 (N.H. 2010)

(quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). "'[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.'" *Id.* (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 556 (1976)). In cases where the plaintiff requests a prior restraint, "the trial court must consider whether publication 'threatens an interest more fundamental than the First Amendment itself.'" *Id.* (citation omitted). "'Only if a plaintiff can meet this substantially higher standard can a court issue an injunction prohibiting publication of pure speech.'" *Id.* (citation omitted). "[P]rior restraints may be issued only in rare and extraordinary circumstances, such as when necessary to prevent the publication of troop movements, to prevent the publication of obscene material, and to prevent the overthrow of the government." *Id.* at 195.

Plaintiff does not address this high standard in his papers. His counsel argued at the TRO hearing that defamation is not protected speech and the risks presented to Plaintiff by the blog therefore outweigh the First Amendment rights of the bloggers. As noted above, however, Plaintiff has not shown that he is likely to establish a claim of defamation against Defendants, nor that their statements are causing the harm he describes. Plaintiff therefore has not shown this to be one of the "rare and extraordinary circumstances" where a prior restraint on speech is warranted.

### III. Other Motions.

In addition to seeking a TRO that would shut down Bobolasgate.info, Plaintiff asks the Court to order Defendants to preserve documents. Doc. 8. Plaintiff appears to make this request under Rule 65.[4] For the reasons explained above, Plaintiff has not made the showing required for injunctive relief under Rule 65. This motion therefore will be denied.

Plaintiff states in a footnote to his TRO application that he "requests as part of [his] preliminary injunctive relief " that GoDaddy "or any other webhost for the Blog" provide Plaintiff with the names and other identifying information for Defendants. Doc. 2 at 2 n.1.

---

[4] Plaintiff's motion seeks relief under "Rule 56" (Doc. 8 at 1), but the Court assumes this to be a transposition of numbers from Rule 65. Rule 56 governs motions for summary judgment and would not provide a basis for preservation of documents.

Case 2:10-cv-02056-DGC   Document 12   Filed 10/01/10   Page 11 of 11

Because Plaintiff says that he will seek this as part of "preliminary injunctive relief" and not as part of the TRO, and because he says he will request the information from other webhosts in addition to GoDaddy, the Court does not construe this footnote as a request for such an order now. The Court also observes that any such request directed at non-parties likely would require issuance of subpoenas under Rule 45, a prima facie showing, *see Best Western v. Doe*, No. CV06-1537-PHX-DGC, 2006 WL 2091695 (D. Ariz. July 25, 2006), and some basis for distinguishing Defendants (U.S. citizen bloggers) from non-Defendants (citizens of other countries).

### IV. Conclusion.

Plaintiff has failed to make the showing required for a TRO. Because Plaintiff has failed on several fronts to establish his right to injunctive relief, the Court will not issue the requested order to show cause or schedule a preliminary injunction hearing.

**IT IS ORDERED:**

1. Plaintiff's motion for expedited consideration (Doc. 9) is **granted**.
2. Plaintiff's motion to seal (Doc. 4) is **granted**.
3. The Clerk is directed to file the lodged declarations (Docs. 5, 6) **under seal**.
4. Plaintiff's motion for a temporary restraining order (Doc. 2) is **denied**.
5. Plaintiff's motion for preservation of documents (Doc. 8) is **denied**.

DATED this 1st day of October, 2010.

*David G. Campbell*
United States District Judge